

**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

BLASINGAME, BURCH, GARRARD & ASHLEY, P.C.
SUITE 320
440 COLLEGE AVE
ATHENS , GA 30601

05/18/2017

RE: DANNA MORRISION

VS: BLASINGAME, BURCH, GARRARD & ASHLEY, P.C.

## Notice of Service

The enclosed process, notice or demand is hereby officially served upon you by the Tennessee Secretary of State pursuant to Tennessee law. Please refer to the process, notice or demand for details concerning the legal matter. If you have any questions, please contact the clerk of the court that issued the process, notice or demand.

The process, notice or demand may have a court date and time that you must appear to defend yourself or the number of days from the date of service by which you are required to file an answer. Failure to appear in court at the time specified or failure to file an answer in the given time could result in a default judgement being rendered against you for relief sought in the lawsuit.

The Secretary's office cannot give you legal advice. If you need legal advice, please consult a private attorney.

Tre Hargett
Secretary of State

Enclosures: Original Documents

**DOCUMENT INFORMATION**
SOS Summons # : 04311080
Case #: 21601
Certified #: 70162140000014628895

**EXHIBIT**
1

SS-4214 (Rev. 8/15)

RDA 1003

Case 1:17-cv-00165-JRG-SKL   Document 1-1   Filed 06/14/17   Page 1 of 16   PageID #: 4

# IN THE CIRCUIT COURT OF MARION COUNTY, TENNESSEE

**DANNA MORRISON**

    Plaintiff,

v.  DOCKET NO: 21601

**BLASINGAME, BURCH, GARRARD &**
**ASHLEY, P.C.**

    Defendants,

## SUMMONS

TO:

Serve through Tennessee Secretary of State,
Pursuant to Long Arm Statue

**SERVE** Blasingame, Burch, Garrard & Ashley, P.C.
440 College Ave
Suite 320
Athens, GA 30601

*RECEIVED STATE OF TENNESSEE 2017 MAY 17 AM 11:22 TRE HARGETT SECRETARY OF STATE*

    You are hereby summoned to answer and make defense to a bill of complaint which has been filed in the Circuit Court of Marion County, Tennessee in the above style case. Your defense of this complaint must be filed in the office of the Circuit Court of Marion County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

    WITNESSED and Issued this 15th day of May, 2017.

**CIRCUIT COURT CLERK**

I, LONNA HENDERSON, CLERK OF CIRCUIT SESSIONS COURT OF MARION COUNTY, TENNESSEE, CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THIS ORIGINAL DOCUMENT FILED IN THIS OFFICE.

THIS 15 DAY OF May, 2017.

By _Lisa Hatfield_
( ) CLERK (X) DEPUTY CLERK

Michael E. Richardson
736 Market Street,
Suite 1550
Chattanooga, TN 37402
Tele   (423) 602-9623
Fax:   (423) 602-7515
Email: mer@mrichardsonlaw.com
*Counsel for Plaintiff*

      Received this _____ day of _____, 2016.

/s/ _____
                **Deputy Sheriff**

IN THE CIRCUIT COURT FOR MARION COUNTY,
TENNESSEE

DANNA MORRISON )
)
    Plaintiff, )
)
v. ) Docket No. 21601
)
BLASINGAME, BURCH, GARRARD & ) JURY DEMAND
ASHLEY, P.C. )
)
    Defendant, )

## COMPLAINT

Plaintiff, Danna Morrison, hereby brings this complaint against defendant, Blasingame, Burch, Garrard & Ashley, P.C., and for her causes in action states as follows:

1. Plaintiff, Danna Morrison, is an individual who resides within Marion County, Tennessee.

2. Defendant, Blasingame, Burch, Garrard & Ashley, P.C., (hereinafter sometimes referred to as the defendant law firm) is alleged to be a professional corporation of attorneys with its principle place of business located at 440 College Ave, Suite 320, Athens, Georgia 30601 and the defendant law firm may be served with process at this address.

3. The causes of action alleged here and after involve actions committed by the defendant law firm which affected the plaintiff and caused her damage here in Marion County, Tennessee. Accordingly, venue and jurisdiction are appropriate in this Court.

4. The plaintiff alleges and charges that the defendant law firm has committed professional negligence, made negligent misrepresentations of fact to the plaintiff which she

relied upon her detriment, breached contractual duties with respect to the contract previously entered into between the respective parties, and breached fiduciary duties owed to the plaintiff as a proximate result of which the plaintiff has suffered substantial damages.

5. The plaintiff would show that several years ago, she underwent a surgical procedure whereby she had a pelvic reconstruction performed upon her and had certain mesh products placed within her. Subsequent to her initial surgery, the plaintiff experienced multiple and serious health problems related to the implantation and placement of the mesh products, which products she believed to be manufactured and distributed by Covidien, C.R. Bard, and other related companies.

6. The plaintiff saw an advertisement placed by the defendant Law Firm, soliciting clients who had experienced problems with mesh products and the plaintiff responded to the solicitation advertisement and contacted defendant, Blasingame, Burch, Garrard & Ashley, P.C., to discuss its potential representation of her interests in connection with a potential products liability action.

7. The plaintiff would show that she eventually signed a contract for representation and a fee agreement with Blasingame, Burch, Garrard & Ashley, P.C., on or about October 18, 2011. A copy of the parties' contract for representation is attached hereto as Exhibit 1. Pursuant to the parties' contract, the defendant law firm agreed to represent the plaintiff's interests in connection with filing claims for damages against the manufacturer, designers, distributors, and sellers of the implantable medical device which had been placed within her, which had caused her significant injuries and multiple surgical procedures.

2

8. The plaintiff avers and charges that at all times referred to here and after and at all times subsequent to the formation of the contractual relationship between the plaintiff and defendant, the defendants owed her duties to fulfill their contractual obligations to her and further owed her duties to represent her interests with the same knowledge and care required of other professionals representing litigants in products liability litigation. The plaintiff further charges that in representing her interests, the defendant law firm was required to have the degree of learning and skill ordinarily possessed by other reputable professionals and was required to use reasonable diligence and best judgment in an effort to accomplish the purpose of the employment entered into between the respective parties.

9. The plaintiff would show that she was contacted by representatives of the defendant law firm in the latter part of 2015 and was advised to accept a settlement offer which had been made by the defendants in the products liability litigation regarding the claims asserted on her behalf by the defendant law firm. The plaintiff was advised by the defendant's representatives that a $325,000 offer had been made and the defendant's representatives strongly recommended to her she should accept the offer. The plaintiff declined the defendant's advice and indicated to the defendant law firm, she wanted to have a Trial as she felt her case was worth substantially more that the offer of $325,000 dollars.

10. The plaintiff would further show that subsequent to hiring the defendant law firm and having a claim asserted on her behalf with respect to the product liability litigation, she had to file a personal bankruptcy proceeding, in large part due to the medical bills she had incurred from the multiple surgeries she had undergone. The defendant law firm was aware of the plaintiff's personal bankruptcy and was aware that a bankruptcy trustee had been

3

appointed to administer her bankruptcy estate. The defendant law firm contacted the plaintiff's bankruptcy trustee, and made the trustee aware of the settlement offer made to the plaintiff.

11. The plaintiff would show that representatives of the defendant continued to contact her and pressure her to accept the $325,000 offer. The defendant law firm representatives did indicate to the plaintiff that an Appeal to a Special Master could be taken which may result in a higher settlement amount, but the plaintiff adamantly refused to accept the defendant's recommendation to settle, even with an Appeal to a Special Master and the potential prospect of a higher settlement amount that may be obtained. The plaintiff reiterated to the defendant law firm she wanted to take her case to Trial as she felt her case would receive a verdict or settlement well in excess of seven figures.

12. The plaintiff would show that after having rejected the defendant's advice to settle, representatives of the defendant law firm contacted her on several occasions and made misrepresentations to her which she relied upon to her detriment in determining to accept the defendants directive to take the settlement offer which the Defendant Law Firm was insisting she accept. The plaintiff would show that the defendant law firm made a number of false and/or negligent misrepresentations to her, including, inter alia, the following:

1. The defendant told the plaintiff that if she did not take their advice and accept the settlement they recommended, that her bankruptcy trustee would decide to take the $325,000 dollar offer and would accept the settlement for her;

2. The defendant told the plaintiff that she would not be eligible to participate in an appeal to the special master;

4

3. The defendant told the plaintiff that her bankruptcy trustee would exclude her from the decision problem process and her bankruptcy trustee would choose to accept the $325,000 settlement offer and not go to trial and that her refusal to settle now would cost her significant money;

4. The defendant told the plaintiff that representatives of the defendant law firm would get her bankruptcy trustee to settle the case and she would lose everything, not receiving anything from the settlement and further told her and she was not eligible to have a trial;

5. The defendant told the plaintiff that her bankruptcy trustee called their office, wanting to accept the settlement and that he was very impatient and that she was out of time;

6. The defendant told the plaintiff that her bankruptcy trustee was going to settle her claims whether she agreed or not and if she delayed further, she would lose everything.

The plaintiff would show that the representatives of the defendant law firm further represented to her that they would get the bankruptcy trustee to settle the case and she would lose everything, not receive any money from the settlement and that she was not eligible to have a Trial. The plaintiff was extremely upset when she was told all this, but based upon the representations being made to her by the defendant law firm, she felt she had no choice but to follow their directions and agreed to settle for an amount far less than she wanted to.

13. The plaintiff would show based that upon the defendants misrepresentations, she did agree to settle. She was later told by the defendant that she had received an award from a Special Master in the approximate amount of $300,000 dollars, which was still substantially less than she ever would have voluntarily have settled for, and she would not have done so, but for, the misrepresentations made to her by the defendant.

5

14. The plaintiff would show that by the end of May, 2016, she hired a personal bankruptcy lawyer, where upon she was advised by her bankruptcy lawyer, and discovered that the defendant law firm and its representatives had made false and misleading statements to her. The plaintiff was advised she did not have to follow the directives of the defendant law firm and was advised that her bankruptcy trustee would not have taken all of her settlement money and left her with nothing. She was also advised that the bankruptcy trustee would not have had the legal authority to accept the settlement offer on her behalf.

**COUNT I**

15. The plaintiff avers and charges that the defendant law firm committed professional negligence and was guilty of professional fault in connection with its representation of her interests. The plaintiff would show the defendant law firm failed to use reasonable diligence and best judgment in an effort to accomplish the highest and best result for the plaintiff. The plaintiff would show she relied upon the professional advice given to her by the defendants and as a proximate result of the professional negligence and fault committed by the defendant, the plaintiff has suffered substantial damages, in that, she agreed to settle her products liability case for substantially less than she would ever done so, but for the defendants negligence.

**COUNT II**

16. The plaintiff would show that the defendant law firm has committed and made negligent misrepresentations of fact to the plaintiff, which the plaintiff relied upon to her detriment. The plaintiff would show the defendant made several statements and

6

representations which were false and misleading, as set forth in paragraph 12 of this complaint. The plaintiff would show that the defendant, while acting in the course of its professional employment and in connection with a litigation matter in which the defendant had a substantial financial interest, negligently supplied false information to the plaintiff which information the defendant intended to guide the plaintiff in trying to make an informed judgment as to whether or not to settle her case. The plaintiff would show she justifiably relied upon the false information supplied to her by the defendant law firm, and as a result, the plaintiff has suffered a substantial financial loss.

17. The plaintiff which would show the defendant law firm had a substantial financial interest in her settling the products liability action, as pursuant to the parties' fee contract, the defendant was to receive a 40% contingent fee of any recovery. The plaintiff avers and charges that the defendant was motivated to give false and misleading information to the plaintiff in order to coerce her in settle the case so that the defendant law firm could receive its 40% contingent fee, without having to take her case to trial.

**COUNT III**

18. The plaintiff and the defendant entered into a valid contract, a copy of which is attached hereto Exhibit 1. The plaintiff charges that the defendant breached contractual duties owed to her. Among other things, the parties' contract stated the case would not be settled without the consent of the client and the plaintiff would show that she did not make an informed decision nor give an informed consent to the defendant in determining to settle the claim, after receiving false and misleading information from the defendant law firm. The

7

defendant law firm breached contractual duties owed to the plaintiff, as a result which the plaintiff has suffered substantial damages.

## COUNT IV

19. The plaintiff charges that the defendant's actions after the formation of the parties' contract breached the common law duty of good faith and fair dealing which is implied in the performance of every contract. As a result of the defendant's breach of the duty of, good faith, the plaintiff has suffered substantial damages.

## COUNT V

20. The plaintiff also alleges and charges that the defendant law firm had a fiduciary relationship with her, as their client, and charges the defendant law firm had an obligation to deal with her with upmost good faith and this relationship extended to all dealings between them. The plaintiff would show the defendants actions, as here and before described, breached fiduciary duties owed to the plaintiff by the defendant law firm, as a result of which she had suffered substantial damages.

21. The plaintiff avers and charges that as a result of the defendant's professional negligence, negligent misrepresentations, breach of contract, breach of good faith and breach of fiduciary duties, her product liabilities case was settled for substantially less than it was worth. The plaintiff never would have settled the case for the amount the defendants told her she had to settle for and she continued to insist that her case be taken to trial. She lost the opportunity to have a trial due to the defendant's misconduct.

8

**WHEREFORE,** plaintiff prays relief as follows:

1. The process issue be served upon the defendant requiring it to answer this complaint within the time allowed by law;

2. That a jury decide all issues in this cause;

3. That a jury award the plaintiff compensatory damages against the defendant in an amount to be set by the jury;

4. That plaintiff recover her reasonable attorney's fees and litigation expenses incurred in connection with this matter;

5. The plaintiff have such other and further relief to which she may be entitled.

**TIDWELL, IZELL & RICHARDSON**

By: *(signature)*

Michael E. Richardson, BPR# 7191
736 Market Street
Suite 1550
Chattanooga, TN 37402
Tele: (423) 602-9623
Fax: (423) 602-7515
Email: mer@mrichardsonlaw.com
*Counsel for Plaintiff*

9



# BLASINGAME · BURCH · GARRARD · ASHLEY, P.C.
Attorneys at Law

LONNA HENDERSON
CIRCUIT COURT
2017 MAY 15 PM 12: 17

W. SEABORN ASHLEY
1947 - 2001

J. RALPH BEAIRD

GARY B. BLASINGAME

E. DAVISON BURCH

HENRY G. GARRARD III

ANDREW J. HILL III

THOMAS H. ROGERS, JR.

MICHAEL A. MORRIS

JAMES B. MATTHEWS

RICHARD W. SCHMIDT

GEORGE W. BROWN III

DAVID A. DISMUKE

MOLLY K. TALLEY

JOSH B. WAGES

THOMAS F. HOLLINGSWORTH III

ANNA C. DOUGHERTY

LEANNA B. PITTARD

ALVIN L. BRIDGES III

PATRICK H. GARRARD

ADAM B. LAND

RUSSELL W. WALL

P.O. Box 832
Athens, Georgia 30603
440 College Avenue, Suite 320
Athens, Georgia 30601
Phone 706.354.4000
Fax 706.353.0673

1040 Founder's Row, Suite B
Greensboro, Georgia 30642
Phone 706.453.7139
Fax 706.453.7842

PLEASE REPLY TO
ATHENS ADDRESS

Gary B. Blasingame     Email address: gbb@bbgbalaw.com
Henry G. Garrard, III     Email address: hgg@bbgbalaw.com
Andrew J. Hill, III     Email address: ajh@bbgbalaw.com
Josh B. Wages     Email address: jbw@bbgbalaw.com
James B. Matthews, III     Email address: jbm@bbgbalaw.com
    Toll free no: 1-866-354-3544

## CONTRACT FOR REPRESENTATION AND FEE AGREEMENT

1. It is hereby agreed by and between **BLASINGAME, BURCH, GARRARD & ASHLEY, P.C.**, a Professional Corporation and **MORGAN & MORGAN**, (the "Firms") and **DANNA MORRISON** (the "Client"), that the Firms will represent the Client in her claims for damages against the manufacturer(s), designer(s), distributor(s) and seller(s), of an implantable medical device, and any others who might be liable or responsible for the product that caused injuries to the Client.

2. **ATTORNEYS' FEES.** The Client hereby agrees to pay the Firms attorneys' fees equal to either forty (40%) percent of the gross proceeds of recovery (whether by settlement, trial, appeal or otherwise), or the maximum amount allowed by law, whichever is less. It is agreed and understood that this employment is upon a contingent fee basis, and if no recovery is made, the Client will not owe the Firms any attorneys' fees except as may be provided below. Case expenses incurred in the prosecution of these claims will be due and payable by the Client as set forth below.

3. **CO-COUNSEL.** The Client understands that the Firms have assumed joint responsibility for her representation in this matter, and that all of these attorneys will be performing legal services in connection with this case.

The Client further understands the division of fees will be as follows:

**Blasingame, Burch, Garrard & Ashley, P.C.**     2/3
**Morgan & Morgan**     1/3

The Client hereby consents to the division of fees as set forth herein.

4. **CASE EXPENSES.** It is understood and agreed that the Client will be responsible for all case expenses, including but not limited to long distance telephone calls, filing costs, investigative expenses, photocopy

Page 1 of 4

**EXHIBIT 1**

costs, travel expenses including but not limited to use of automobiles and private or commercial aircraft, court reporting expenses, sums payable to doctors and hospitals for medical reports, fees and expenses of expert witnesses, document management expenses, graphics, media development and any other expenses incurred in representing the Client regarding these claims referenced herein. These expenses will be deducted from Client's share of any recovery. These expenses and any accrued interest thereon, will be paid out of the Client's share of the recovery <u>after</u> the attorneys' fees are calculated on and subtracted from the gross recovery.

5. **ADVANCE OF EXPENSES.** So long as the Firms are representing the Client in this matter, the Firms agrees that it will advance to the Client the court costs and expenses of litigating this matter. The repayment of those costs and expenses of litigation, except as provided in Paragraph 11 below, is contingent upon the outcome of this matter, and shall be deducted from Client's share of any recovery as set forth in Paragraph 2 of this agreement above. All costs and expenses associated with the litigation which are advanced or paid by the Firms shall accrue interest at the maximum rate of interest authorized by applicable law, but not to exceed seven percent (7%) per annum, and said interest shall commence to accrue on the first day of the first calendar month after the month in which the Firms pay the cost or expense. The Firms contemplate borrowing the funds necessary to pay the court costs and litigation expenses associated with this matter, and the interest rate specified herein is an approximation of the anticipated costs of borrowing such funds( or the opportunity cost of utilizing funds of the Firms, without borrowing). The Firms' actual cost of borrowing such funds, (or the opportunity cost of utilizing firm funds) to pay such costs and expenses may differ from the interest rate specified herein.

6. **RIGHT TO WITHDRAW FROM REPRESENTATION.** If after investigating this matter, or at any stage in the litigation, the Firms determine that it wishes to withdraw from representation, the Firms may withdraw as counsel for the Client after giving written notice to the Client and in compliance with Court Rules and Standards of Professional Ethics.

7. **AUTHORITY TO COMPROMISE/SETTLE CLAIMS.** The Firms and the Client agree that the case may not be settled without the consent of the Client, and that the Client will take into consideration advice and recommendations of the Firms before making any decision to settle.

8. **ASSOCIATION OF COUNSEL.** The Firms may associate other counsel to assist in the prosecution of the Client's claim so long as such association is disclosed to the Client. Fees will be divided between the Firms and associated counsel in accordance with the services provided and agreement of the attorneys, and attorneys' fees shall be the same as provided in this Contract unless otherwise agreed to in writing by the Client, the Firms and the associated counsel.

9. **STRUCTURED SETTLEMENT.** Should Client's case be resolved through a structured settlement whereby the Defendants or their insurers make a lump sum payment followed by periodic payments over a term of years or for life of the Client, the attorneys' fees shall be computed in accordance with the percentage agreed to herein, which shall then be applied either to the present cash value of the lump sum payment plus the present cash value of any such future benefits or to the cost to the Defendant or the Defendant's insurer(s) of all such payments, at the option of the Firms.

10. **PAYMENT OF MEDICAL EXPENSES.** The Client authorizes the Firms to pay from the recovery, whether by settlement or judgment, all charges for medical services incurred for treatment of the Client, in whole or pro rata (if there are not sufficient funds to pay all such expenses therefrom). The Firms in obtaining such authority does not guarantee the payment of such expenses to said medical providers, and does not obligate or otherwise contractually bind itself to make such payments.

11. **QUANTUM MERUIT.** In the event this agreement is terminated at the instance of the Client, the Firms shall be entitled to recover from the Client all reasonable attorney fees for the work performed to time of termination based upon the doctrine of quantum meruit, and shall also be entitled to recover all its case expenses as described in Paragraph 3 above, plus interest as described in Paragraph 5, above.

12. **NO GUARANTEES.** It is understood that the Firms have made no guarantees or representations whatsoever to the Client as to what amount, if any, will be recovered as a result of the Firms' efforts.

13. **GOVERNING LAW.** The validity, enforceability, construction and interpretation of this Agreement shall be governed by the laws of the State of Georgia. Client waives her right, if any, to have the law of any state other than the State of Georgia apply to this Agreement.

14. **VENUE AND PERSONAL JURISDICTION.** Any dispute arising out of or related to this Agreement, or any breach or alleged breach thereof, shall be exclusively decided by a state court in the State of Georgia. Client waives her right, if any, to have any dispute arising out of or related to this Agreement decided in any jurisdiction or venue other than a state court in the State of Georgia. Client hereby consents to the personal jurisdiction of the state courts in the State of Georgia for purposes of any action arising out of or related to this Agreement.

15. **CHANGES TO AGREEMENT MUST BE IN WRITING.** This Agreement and its terms set forth herein may not be changed except by written amendment.

This 18th day of OCTOBER, 2011.

_____Danna Morrison_____(L.S.)
**DANNA MORRISON**

Page 3 of 4

Case 1:17-cv-00165-JRG-SKL  Document 1-1  Filed 06/14/17  Page 15 of 16  PageID #: 18

Accepted by
BLASINGAME, BURCH, GARRARD
& ASHLEY, P.C.

440 College Avenue / P.O. Box 832
Athens, GA 30603
706-354-4000

_____
Gary B. Blasingame
Henry G. Garrard, III
Andrew J. Hill, III
Josh B. Wages
James B. Matthews, III

Accepted by
MORGAN & MORGAN, P.A.

_____
Attorney

One Tampa City Center
7th Floor
201 N. Franklin St.
Tampa, FL 33602

Page 4 of 4

Case 1:17-cv-00165-JRG-SKL   Document 1-1   Filed 06/14/17   Page 16 of 16   PageID #: 19